# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

June 14, 2024

***BY ECF***
Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:** ***United States v. Edwin Cordero,***
   ***23 Cr. 56 (RA)***

Dear Judge Abrams,

The Court should sentence Edwin Cordero to 18 months' imprisonment, followed by 12 months' supervised release.

Given the pendency of the state charges against Mr. Cordero, which overlap with the supervised release specifications lodged against him, I have advised Mr. Cordero not to make any statements or admissions related to his sentencing in this matter, and I submit this limited sentencing letter on his behalf.

Mr. Cordero's supervised release was imposed in connection with his 2021 conviction for wire fraud in the District of New Jersey. Mr. Cordero was on bail throughout his underlying case and had no violations. PSR at ¶¶ 167-68. He was permitted to self-surrender to his BOP-designated facility, and he completed his term of imprisonment without incident. Before his federal case, Mr. Cordero had two prior convictions: a 2003 robbery conviction when he was 16 years old and a 2011 trespassing conviction when he was 23 years old. PSR at ¶¶ 184-85. Neither conviction appears to have caused another person physical injury.

Mr. Cordero has not had an easy life. From the time he was born until he turned 11, he lived with his paternal grandparents in the Bronx. His mother was largely absent during those years because of her struggles with drug addiction and substance abuse. Unfortunately, a couple months after Mr. Cordero reconnected with his mother and moved in with her on Staten Island, Mr. Cordero's mother was arrested. Barely an adolescent, Mr. Cordero witnessed the police rush into his home

and detain his mother. Following this traumatic experience, Mr. Cordero returned to his grandparents' care, where he resided until he was arrested at 16 for robbery.

By the time Mr. Cordero was 23 and released from custody in connection with his trespassing conviction, he was ready to turn his life around. He produced his own music and distributed his records throughout Downtown Manhattan. He also became a father in 2013. Because his own parents were absent, Mr. Cordero took his parenthood seriously and maintains a strong connection with his children.

When Mr. Cordero turned 31, he moved in with his now-wife Ashley Cordero and her five children. The two of them also have a two-year-old and an infant together. Ms. Cordero remains supportive of her husband (Exhibit A) and very much has her life together, gainfully employed as a home healthcare worker.

Between 2013 and 2014, Mr. Cordero was shot, stabbed, and slashed— random acts of violence sadly commonplace in parts of the Bronx where Mr. Cordero has lived. More recently, in or about November 2023, Mr. Cordero was jumped and slashed in the face by an unknown assailant. The scars on his face reflect the severity of Mr. Cordero's injuries.

Before he was arrested in the instant matter (after voluntarily answering an NYPD detective's questions at the precinct), Mr. Cordero had been doing relatively well on supervised release. He was a participant in the District's RISE Court curriculum and was a guest speaker to a Columbia law school class taught by an Assistant Federal Defender. He was also employed and maintained regular contact with his probation officer.

The present circumstances have been devastating for Mr. Cordero. Not only has he been separated from his wife and children, but Mr. Cordero has also endured hellish confinement conditions at both Rikers Island and MDC Brooklyn, including a recent, a seemingly indefinite lockdown at MDC Brooklyn following a homicide on Unit 82. The terrible nature of Mr. Cordero's imprisonment weighs against the Government's requested sentence of 24 months. Indeed, the nearly four months Mr. Cordero has already served in custody (mostly at MDC Brooklyn) have been ultra punitive.

The conditions at MDC have been heavily criticized by judges throughout the Southern and Eastern Districts of New York. For example, in December 2023, Judge Irizarry in the Eastern District remarked that the United States Attorney's Office "is very much aware of the abominable conditions at the MDC." *United States v. Young*, 23 Cr. 475 (DLC) (Dec. 13, 2023). Judge Berman has previously noted that the MDC is "dirty," "infested with drugs," and that there is a prevalence of "violence." *United States v. Moran*, 19 Cr. 209 (RMB) (May 5, 2020), Dkt. No. 90, Tr. 12-15, 37. Judge McMahon has described the conditions at the MDC as

2

"disgusting [and] inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that." *United States v. Days*, 19 Cr. 619 (CM) (Apr. 29, 2021), Dkt. No. 35, Tr. 19. Sadly, these awful conditions have only worsened over time and have persisted through Mr. Cordero's detention.

Specifically, the current, acute staffing shortages at MDC Brooklyn fuel the ongoing crisis. Judge Furman recently observed that "[d]ata provided by the Government (at the Court's direction) confirms that there have been severe staffing shortages at the MDC for years." *United States v. Chavez*, No. 22 Cr. 303 (JMF), 2024 WL 50233, at *2 (Jan. 4, 2024) (noting that "as of November 2023, *the MDC was operating at only about 55% of its full correctional officer staffing level*") (emphasis in original). As Judge Furman further noted:

> A recent memo by Rhonda Barnwell, the president of the union local representing the MDC's correctional officers, helps explain why the MDC's staffing shortage translates directly into its inhumane conditions of confinement. *See United States v. Irizarry*, 23-CR-60 (JMF), ECF No. 47-3 (S.D.N.Y. Oct. 30, 2023). According to her memo, "[o]n a daily basis housing units ... are left ... unmanned by staff[ ] and locked down, with the expectation ... that a single [ ] Officer is to make rounds, feed, and perform additional correctional duties" on three units during a single shift. *Id.* at 1-2. The frequency of lockdowns "angers the inmates and heightens the inherent danger for staff," but "[c]overage is so minimal that at times there are only 6 staff members available to respond to body alarms, staff assists, and[/]or inmate medical emergencies." *Id.* at 2.

*Chavez*, 2024 WL 50233, at *7 n.16. Indeed, during these frequent lockdowns, Mr. Cordero and his fellow detainees are denied the most basic level of care, including access to showers, medical treatment, and phone calls with their families. The staffing shortages and lockdowns only exacerbate the abysmal "physical conditions" at MDC, which, Judge Furman recently held, "have long been problematic." *Chavez, supra* (citing reports of mold, vermin, denial of light and heat, overflowing toilets, etc.). As Judge Kaplan recently explained:

> Serving time over the past few years in [Essex and MDC] has been horrible. It is, in significant measure, the fault of a government which does not provide the facilities or the money to hire competent staff in sufficient numbers to run those facilities in a humane and effective manner. It's a problem we've been dealing with every day for a long time. A sentence of a year in those prisons today, although it's very hard to quantify, is ever so much worse than it would have been five years ago. It's just dreadful.

*United States v. Tontisabo*, 21 Cr. 701 (LAK) (Jan. 3, 2024), Sent. Tr. 39-40. Having endured for the past several months a gratuitous level of punishment and inhumanity at MDC Brooklyn, Mr. Cordero has already suffered tremendously and does not deserve the maximum allowable punishment of two years' imprisonment sought by the Government.

Mr. Cordero did not leave his house on February 19, 2024, looking for trouble and he is extremely disappointed in himself for his current situation. He also understands that the events of that evening victimized a young person who did not deserve to be attacked, and whose pain and suffering will likely persist well beyond the conclusion of this case. A sentence of 18 months' imprisonment followed by 12 months' supervised release is sufficient given the totality of the circumstances, particularly Mr. Cordero's confinement conditions and the real prospect of additional time in state custody.

Respectfully Submitted,

Andrew John Dalack
Assistant Federal Defender
Tel.: (212) 417-8768

Cc:    AUSA Adam Z. Margulies

4